**LANSILL v. BURNET, Commissioner of Internal Revenue, and five other cases.**

**Nos. 5294–5299.**

Court of Appeals of District of Columbia.

Argued Feb. 2, 1932.

Decided March 28, 1932.

Chas. B. McInnis and Ward Loveless, both of Washington, D. C., for appellant Jane Burt Hay.

F. O. Graves and Ward Loveless, both of Washington, D. C., for other appellants.

Sewall Key, C. M. Charest, and Prew Savoy, all of Washington, D. C., G. A. Youngquist, Asst. Atty. Gen., and John G. Remey and Morton Rothschild, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

These consolidated appeals relate to income taxes for the years 1921 to 1924, inclusive. The issue arises in a case wherein certain heirs employed an attorney to contest their ancestor's will, agreeing to pay him for his services a sum equal to 10 per cent. of the amount recovered in the litigation as and when received by them. Certain mineral royalties payable annually were secured by the attorney for the heirs, and were thereafter regularly collected by a bank under instructions of the heirs to pay the amount of the attorney's fees directly to him, which was done. The question arises whether under these circumstances the heirs are obliged to include the sums thus paid to the attorney in their returns of gross taxable income for the years when paid.

The appellants are the descendants and next of kin of Wellington R. Burt, of Saginaw, Mich., who died testate on March 2, 1919, leaving a large estate composed in part of valuable ore lands on the Mesaba Range in the state of Minnesota.

The testator appointed the Second National Bank of Saginaw, hereinafter called the bank, as executor and trustee of his estate, with directions to pay certain fixed annuities therefrom, and provided, among other things, that his iron mines and interests in Minnesota should not be sold or in any way incumbered; that the existing leases thereon should be continued; and that the trust should continue until the death of certain of testator's grandchildren.

On March 15, 1919, appellants employed an attorney to represent them in any and all proceedings in court which might be brought by them to set aside testator's will, and recover their interests as heirs at law of his estate. A written contract providing for the attorney's compensation was executed by the parties, wherein it was stipulated that the heirs should pay him a sum equivalent to 10 per cent. of the full amount or value actually received in money or property by them resulting from any judgment or compromise, provided, however, that the compensation should not exceed the sum of $1,000,000 if the property and money so received by the heirs should not exceed in value the sum of $15,-000,000; but if it should exceed that amount the attorney was to be paid as additional compensation a sum equal to 5 per cent. of the value of the money or property received by the heirs in excess of $15,000,000.

On October 3, 1919, a written modification of this contract was executed by the parties, containing a stipulation that, in respect of any interest in the mining properties in Minnesota which belonged to testator, and which might be received by the heirs respectively, the attorney's compensation should be made by payment of 10 per cent. of the amounts of money or the value of any property received by the heirs, respectively, as and when received by them, whether of royalties or other income, and, if part of the receipts be property other than money, the compensation, so far as based upon the property, might be paid in five equal annual installments, without interest.

A suit contesting testator's will was then filed for the heirs by their attorney, in the probate court of Saginaw county, Mich., where the will was presented for probate. The case was certified to the circuit court of Saginaw county, and, while it was pending there, an agreement for a settlement was concluded on July 1, 1920, and was approved by the court, between the heirs at law, the legatees affected by the agreement, and the bank as executor and trustee under the will.

It was provided by the compromise agreement that the ore lands in Minnesota then under lease should be held in trust by the bank for the appellants as next of kin, and that the royalties therefrom should be collected by the bank and be distributed periodically to appellants. On July 9, 1920, appellants severally executed written orders to the bank authorizing and directing it as trustee to pay to the attorney 10 per cent. of the amounts of money thus collected by it, until such time as the total payments to the attorney should amount to $166,666, after which 5 per cent. should be paid to the attorney as

directed. These orders were given merely to facilitate the execution of the written agreement dated March 15, 1919, as modified October 3, 1919, relating to the compensation of the attorney. The bank accordingly collected the periodical royalties accruing from the ore leases, and paid a sum equal to 10 per cent. thereof to the attorney as directed.

The appellants contend that the sums thus paid to the attorney were never received by them, and consequently did not become part of their gross taxable income returnable under section 213, Revenue Act of 1921, 42 Stat. 227, 237; therefore they did not include the amounts in their returns. The Commissioner of Internal Revenue, however, held such sums to be returnable as part of the gross taxable income of appellants under the provision for "income derived from any source whatever" in section 213, supra. Deficiencies were determined accordingly by the Commissioner, and an appeal was taken from his ruling. The Board of Tax Appeals sustained the Commissioner's decision.

We agree with the opinion of the Board.

■ The appellants when contracting for the employment of the attorney did not agree to assign or transfer to him any interest or estate in the mineral leases, or the income derived therefrom, nor did they at any time execute such a transfer or assignment to him. In the written agreements it was specified that the attorney should be paid a sum equivalent to 10 per cent. of the full amount or value actually received by the heirs in money or property resulting from litigation or compromise of the case, and that if the heirs received property in settlement they might pay the stipulated percentage of its value in three or five annual installments thereafter. It was also agreed that, if the parties could not agree upon the valuation of such property, arbitrators should be selected to appraise the same. In the written orders given to the bank by the respective heirs on July 9, 1920, it was expressly stipulated that nothing therein should be construed as modifying or changing the foregoing agreements, and copies of these were attached to the orders. The arrangement with the bank therefore was merely a convenient method of collecting the royalties for the heirs and paying therefrom as and when collected the percentage due from them to the attorney. The entire royalties when collected therefore became in fact and law the income of the heirs, and were returnable as such. Old Colony Trust Company v. Commissioner of Internal Revenue, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; United States v. Boston & Maine Railroad, 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929; American Telegraph & Cable Company v. United States, 61 Ct. Cl. 326; Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731.

■ It is claimed that the orders given by the heirs to the bank were "irrevocable," and that this fact takes the case out of the foregoing rule. In our opinion it does not appear from the record that the orders were irrevocable, nor would such a fact if it existed alter the essential character of the transaction.

A question relating to the right of appellants to deduct the amount of compensation paid to the attorney from their gross taxable income as corrected is considered and decided by the court concurrently herewith in Hutchings v. Burnet, Commissioner, 61 App. D. C. 109, 58 F.(2d) 514, which may be read in connection with this opinion.

The decisions of the Board of Tax Appeals are affirmed.