## LONGYEAR v. HELVERING, Com'r of Internal Revenue.

### No. 6277.

United States Court of Appeals for the District of Columbia.

Argued Jan. 15, 1935.

Decided March 18, 1935.

W. B. McIlvaine and J. F. Dammann, both of Chicago, Ill., for petitioner.

Frank J. Wideman, Sewall Key, L. W. Post, and Robert H. Jackson, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

A petition for the review of a decision of the United States Board of Tax Appeals relating to income taxes assessed against petitioner, John M. Longyear, Jr., for the years 1925, 1926, 1927, and 1929. The decision of the Board is reported in 28 B. T. A. 1086.

It appears that John M. Longyear, the petitioner's father, a resident of Michigan, died testate on May 28, 1922, possessed of a large estate, and his last will and testament was duly admitted to probate in that state. By the terms of his will the testator directed that a residue of his estate composed of both real and personal property should be placed with trustees in trust for the purpose of collecting rents, issues, and profits, with power in the trustees to invest and reinvest, and to sell the corpus, and with directions to distribute the income as well as the proceeds from the sale of the property share and share alike to his children, of whom petitioner was one.

At the time of decedent's death petitioner was married, his wife being Elizabeth B. Longyear, but they were estranged and actually separated from one another.

On November 1, 1922, the petitioner while in Mexico executed and delivered to his wife an instrument of assignment hereinafter called the "Mexican assignment," whereby he assigned to her for her support and the support and education of their two children a one-half part of whatever sums of money due or to become due to him from the estate of his deceased father. Thereafter for a while during 1923 and a part of 1924 payments were made by the trustees of the estate under this assignment to petitioner's wife and children.

In October, 1923, a suit for divorce was filed in the state of Nevada wherein the petitioner was plaintiff and cross-defendant, and his wife was defendant and cross-plaintiff.

On December 20, 1923, petitioner and his wife entered into a written agreement in the state of Nevada which by its terms canceled the Mexican agreement. The Nevada agreement recites in part that it was the intention of the parties to settle all their property rights and to provide for the custody,

maintenance, and support of their children, and also to provide for the future comfort, maintenance, and support of petitioner's wife. In order to carry out the purposes of the agreement, petitioner executed an assignment whereby he assigned to each of his two children a one-eighth interest and to his wife a one-fourth interest in "whatever sums of money or other property" might be due or coming to him from the estate of his father, stipulating therein that should his wife remarry after receiving from the trustees of his father's estate the sum of $150,000 in money or property then her right to any further distribution from petitioner's share of the estate should cease upon such remarriage; and that if she should remarry before she received money or property to the value of $150,000 from petitioner's share of his father's estate, then and in that case she should continue after such remarriage to receive such payments as before until the total value received by her should equal the sum of $150,000, and thereupon her right to any further distribution from the estate should cease.

This agreement contained the following provision: "Article XII. Mrs. Longyear does covenant and agree with Mr. Longyear that upon the full performance of each and all of the covenants and agreements herein contained by him to be performed, she does and will expressly release Mr. Longyear from any and all claims or demands for alimony pendente lite or permanent, expense money, attorneys' fees, costs of suit, maintenance or support."

On December 22, 1923, a decree of divorce in favor of petitioner's wife was entered by the Nevada court in the divorce case. The decree dissolved the marriage between the petitioner and wife, and approved the agreement entered into on December 20, 1923, supra, settling the property rights of the parties and providing for the maintenance and support of Mrs. Longyear and the support, education, custody, and guardianship of the two minor children.

Some time after the date of the Nevada decree the executors and trustees of the estate of John M. Longyear, deceased, began to question the validity of the assignments made by petitioner to his wife, and refused to make any further payments under them. Thereupon, on July 7, 1924, petitioner's wife in her individual capacity, and as guardian of the minor children, filed a bill in equity in the circuit court of Marquette county, Mich., asking a decree of the court holding the assignments valid and enforcing the terms thereof.

On December 29, 1925, while the suit was pending, the parties thereto, including the executors and trustees of decedent's estate, and Mrs. Longyear individually and as guardian for the minor children, entered into a written agreement in settlement of the various questions raised in the case. This agreement was duly filed in the circuit court and was approved by the court. The court in its decree held that the agreement of December 29, 1925, was a just and reasonable settlement of "certain good-faith controversies arising in and growing out of the administration of the estate of John M. Longyear, deceased, under his will," and thereupon decreed that all the controversies involved in the action "be and hereby are forever settled, compromised, and adjusted in accordance with the terms of said agreement."

As to Mrs. Longyear the settlement agreement provides for the payment to her by the trustees of the sum of $12,500, and a further sum equal to interest at the rate of 6 per cent. per annum upon $150,000 from the 1st day of July, 1925, to the effective date of the agreement. It also provided for the execution and delivery by the petitioner to her of a note bearing date as of the effective date of the agreement, for the payment to her of $150,000 together with interest at 6 per cent. per annum and payable on or before the 1st day of January, 1945. The agreement was to be made a part of the note by reference on its face. The agreement also provides that "there shall stand as security" for the note a one-fourth part or portion of the share of the petitioner in the estate of his father, and that all distributions from such one-fourth part from and after the effective date of the agreement and until full payment of the principal and interest of the note shall be paid to the holder of the note, and applied first to the payment of any accrued interest thereon and then on account of any balance of the indebtedness. A copy of the agreement is contained in the record.

Mrs. Longyear on her part released any and all rights which she had or might thereafter claim under the Mexican or Nevada assignments hereinbefore referred to.

After the date of this agreement various payments of interest on the $150,000 note

and on account of the principal thereof were made directly to Mrs. Longyear as holder of the note, by the executors and trustees of John M. Longyear, deceased, from the share of petitioner in the estate. All of such payments and distribution were made in accordance with the provisions of the settlement agreement. The distributions included a payment of $4,510.95 as interest on the note from July 1, 1925, to December 30, 1925. Other payments of interest were made on the note by the trustees under the terms of the settlement agreement as follows, to wit: $5,812.33 in 1926; $5,237.07 in 1927; and, $4,800.28 in 1929.

The Commissioner of Internal Revenue included in the gross income of the petitioner the foregoing payments made to Mrs. Longyear by the trustees of the estate under the terms and conditions of the agreement and decree of the court above recited. The petitioner claimed that the Commissioner erred in including these sums in his gross returns upon the ground that they were not paid to petitioner, nor received by him, but were in fact paid by the trustees to his divorced wife in her individual right and capacity. Petitioner therefore prayed that the court should hold that the items of income above referred to were not his income; and, furthermore, that if they were held to be income received by him, he should be entitled to deductions from his gross returns for such part of the payments as represented interest upon the note for $150,000 held by his wife. Petitioner prayed that the deficiencies in tax determined by the Commissioner for the years in question be overruled and set aside, and that no deficiency order be entered for such years. The Board of Tax Appeals ruled against petitioner's contention in both particulars. Whereupon the present petition for review was filed in this court.

■ We are of the opinion that the decision of the Board of Tax Appeals is correct. It appears from the record that in the so-called "Nevada agreement," made December 20, 1923, it was stipulated in contemplation of a divorce between the parties that the petitioner should make an assignment of part of his interest in his father's estate to his wife and that she should accept the same in lieu of all claims or demands for alimony, maintenance, and support. The decree of divorce granted by the Nevada court two days thereafter approved of the terms of this contract providing as stated for the future support and maintenance of Mrs. Long-

year. In the agreement made on December 29, 1925, it was stipulated that Mrs. Longyear should release the rights secured to her by the Mexican and Nevada contracts and in lieu thereof she should be given a promissory note signed by petitioner, promising to pay her the sum of $150,000, with interest at the rate of 6 per cent. per annum, payable on or before the 1st day of January, 1945. It was stipulated that this note should be secured by a lien upon a one-fourth part of the share of petitioner in his father's estate, and that all distributions from such part from and after the effective date of the agreement and until the full payment of the principal and interest of the note should be made to the holder of the note. These facts effectually contradict any claim that the petitioner had irrevocably divested himself of his title and interest to such share of his father's estate as was subjected to the lien of the plaintiff's claim. He remained the owner thereof, subject to the lien securing the payment of the debt. The debt was payable on or before January 1, 1945, the petitioner thereby reserving the right to pay the debt and discharge the lien at any time. The transaction does not sustain the claim that the petitioner had made an irrevocable assignment of his share of his father's estate or the income therefrom to his former wife. The case therefore falls within the principle declared by this court in James McDonald v. Helvering, decided December 10, 1934, reported 64 App. D. C. 92, 74 F. (2d) 1005. In this case, as in that, the income upon petitioner's share of his father's estate accrued to him and became constructively his property before it was paid upon his indebtedness by the trustees to his former wife. Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731; Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916; Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665; Luce v. Burnet, 60 App. D. C. 393, 55 F.(2d) 751; Lansill v. Burnet, 61 App. D. C. 107, 58 F.(2d) 512. Accordingly he was required to include the entire income in his gross return.

■ The claim made by petitioner for a deduction of such part of the payments made to Mrs. Longyear as paid interest upon the note held by her cannot be sustained. The note represented alimony secured to her by agreement between herself and her former husband. The obligation did not lose the character of alimony when incorporated in the note. Gilman v. Commissioner (C. C. A.) 53 F.(2d) 47, 50, 80 A. L. R. 209. It is

well established that money paid by a husband to his wife for alimony, or for the interest upon an obligation executed for such a consideration, does not come within the exemption of interest provided for by section 214 (a) of the Revenue Act of 1926 (44 Stat. 9, 26 (26 USCA § 955 (a). In Gould v. Gould, 245 U. S. 151, 154, 38 S. Ct. 53, 62 L. Ed. 211, it is held that alimony paid monthly to a divorced wife under a decree of court is not taxable as income under the Income Tax Act of August 3, 1913 (38 Stat. 114, 166). It is said by the court, 245 U. S. 151, page 154, 38 S. Ct. 53, that: "The net income of the divorced husband subject to taxation was not decreased by payment of alimony under the court's order; and, on the other hand, the sum received by the wife on account thereof cannot be regarded as income arising or accruing to her within the enactment." In Treasury Regulations 45, Revenue Act of 1918, art. 291, it is said: "Alimony and an allowance paid under a separation agreement are not deductible from gross income." In art. 73 idem, it is said: "Neither alimony nor an allowance based on a separation agreement is taxable income." These provisions appear in Regulations 62, Revenue Act of 1921, arts. 291 and 73; Regulations 65, Revenue Act of 1924, arts. 291 and 73; Regulations 69, Revenue Act of 1926, arts. 291 and 73; Regulations 74, Revenue Act of 1928, arts. 281 and 83. Accordingly upon both contentions of petitioner we sustain the decision of the Board of Tax Appeals.

Affirmed.