PAUL A. TESCHNER AND BARBARA M. TESCHNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90023. Filed September 28, 1962.

*Paul A. Teschner*, pro se.
*Seymour I. Sherman, Esq.*, for the respondent.

TRAIN, *Judge:* Respondent determined a deficiency in the 1957 income tax liability of petitioners in the amount of $283.16.

The sole question is whether petitioners are taxable on a prize received by their daughter.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found hereby as facts.

Petitioners Paul A. (hereinafter referred to as Paul) and Barbara M. Teschner are husband and wife. They filed a joint Federal income tax return on the cash basis for the calendar year 1957 with the director of internal revenue, Chicago, Illinois.

Sometime prior to October 2, 1957, Johnson & Johnson, Inc. (hereinafter referred to as Johnson & Johnson), in cooperation with the Mutual Benefit Life Insurance Company of Newark, New Jersey (hereinafter referred to as Mutual), announced a contest called the "Annual Youth Scholarship Contest" (hereinafter referred to as the contest). An entrant was required to complete in fifty additional words or less the statement "A good education is important because * * *."

Any person in the United States or Canada was entitled to enter the contest with the exception of employees or their families of either Johnson & Johnson or Mutual. The prizes listed, totaling $75,000, were as follows:

| | |
|---|---|
| Grand prize | $10,000 |
| Two second prizes | 5,000 each |
| Four third prizes | 2,500 each |
| Six fourth prizes | 1,500 each |
| Thirty-six fifth prizes | 1,000 each |

The prizes consisted of annuity policies in the face amount of the respective prizes. Rule 4 of the contest stated that:

Only persons under age 17 years and 1 month (as of May 14, 1957) are eligible to receive the policies for education. A contestant over that age must designate a person below the age of 17 years and 1 month to receive the policy for education. In naming somebody else, name, address and age of both contestant and designee *must* be filled in on entry blank.

As of May 14, 1957, both petitioners were over the age of 17 years and 1 month.

The preclusion of Paul from eligibility to receive any of the policies was neither directly nor indirectly attributable to any action taken by him. He had not suggested such a contest to anyone; had never dis-

cussed such a contest with representatives of either Johnson & Johnson or Mutual; and had no knowledge of the contest until the official announcement of it was first brought to his attention. Neither at the time Paul prepared and submitted the entry nor at any other time has there been any arrangement or agreement between petitioners and their daughter to divide or share in anything of value she might receive.

Paul, an attorney, entered the contest, submitting two statements on the form supplied by Johnson & Johnson. At that time, he designated his daughter, Karen Janette Teschner (hereinafter referred to as Karen), age 7, as the recipient should either of the entries be selected.

One of the statements submitted by Paul was selected, and on October 2, 1957, petitioners' daughter received the following telegraph notification addressed to her:

JOHNSON & JOHNSON AND THE MUTUAL BENEFIT LIFE INSURANCE COMPANY TAKE GREAT PLEASURE IN INFORMING YOU THAT YOU HAVE BEEN AWARDED THE FOURTH PRIZE OF A ONE THOUSAND FIVE HUNDRED DOLLAR PAID-UP INSURANCE POLICY IN THEIR NATIONAL YOUTH SCHOLARSHIP CONTEST. YOU WILL BE CONTACTED WITH FURTHER DETAILS AS SOON AS POSSIBLE—
NATIONAL YOUTH SCHOLARSHIP COMMITTEE

Thereafter, Johnson & Johnson filed an application and paid Mutual $1,287.12. As the result thereof, petitioners' daughter received from Mutual, during 1957, a fully paid-up annuity policy, having a face value of $1,500. This policy contained no limitation whatsoever on the manner in which Karen would be entitled to use the proceeds or any other benefits available under the policy. Specifically, the use of these proceeds or benefits was not limited to educational or similar purposes.

Petitioners did not include any amount in their 1957 income tax return with regard to the foregoing annuity policy. Respondent determined that the policy constituted gross income to petitioners, and assigned a value thereto of $1,287.12, the consideration paid by Johnson & Johnson.

OPINION.

While the taxability of prizes and awards may have been in doubt prior to the enactment of the Internal Revenue Code of 1954,[1] it is now clear that they are includible in gross income,[2] with certain excep-

---

[1] Compare such cases as *Pauline C. Washburn*, 5 T.C. 1333 (1945) ("Pot O'Gold" case); *McDermott v. Commissioner*, 150 F. 2d 585 (C.A. D.C. 1954) (Ross Essay contest); *Glenn v. Bates*, 217 F. 2d 535 (C.A. 6, 1954) (car giveaway); *Ray W. Campeau*, 24 T.C. 370 (1955) ("Hollywood Calling—Film of Fortune") with *Herbert Stein*, 14 T.C. 494 (1950), and *Robertson v. United States*, 343 U.S. 711 (1952).

[2] See H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 11, A27 (1954). S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 13, 178 (1954). Finance Committee Hearing, 83d Cong., 2d Sess., pp. 12, 482 (1954).

tions not here applicable. Sec. 74 I.R.C. 1954.[3] The sole question in this case is whether the prize (annuity policy) is taxable to petitioners.

Respondent, relying on *Lucas* v. *Earl*, 281 U.S. 111 (1930), and Rev. Rul. 58–127, 1958–1 C.B. 42, contends that the annuity policy which Karen received is includible in petitioners' gross income. Respondent states on brief that the issue here "is whether a prize attributable to a taxpayer's contest efforts, which, if received by him, would constitute taxable income in the nature of compensation for services rendered, may be excluded by him because paid to his designee." Respondent declares his theory of the case to be "that whenever *A* receives something of value attributable to services performed by *B*, *B*, the earner, is the proper taxpayer."

Petitioners contend that the value of the annuity policy should not be included in their gross income because they did not receive anything either actually or constructively and never had a right, at anytime, to receive anything that could have been the subject of an anticipatory assignment or similar arrangement.

We agree with the petitioners.

In the instant case, we are not confronted with the question of whether the prize is income. The sole question is whether it is the petitioners' income for tax purposes. Certainly, it was Paul's effort that generated the income, to whomever it is to be attributed. However, as we have found, he could not under any circumstances whatsoever receive the income so generated, himself. He had no right to either its receipt or its enjoyment. He could only designate another individual to be the beneficiary of that right. Moreover, under the facts of this case, the payment to the daughter was not in discharge of an obligation of petitioners. Cf. *Douglas* v. *Willcutts*, 296 U.S. 1 (1935). At age 18, Karen will be entitled to $1,500. She can use that money, in her uncontrolled and unfettered discretion, for any purpose she chooses. Nor does respondent here contend that petitioners received income by virtue of a satisfaction of an obligation to support. Finally, there is no evidence whatsoever that the arrangement here involved was a sham or the product of connivance.

As pointed out above, respondent relies, in part, on Rev. Rul. 58–127, *supra*, and a consideration of that ruling is useful because it reveals the error into which the respondent has here fallen. Under the cir-

---

[3] SEC. 74. PRIZES AND AWARDS.

 (a) GENERAL RULE.—Except as provided in subsection (b) and in section 117 (relating to scholarships and fellowship grants), gross income includes amounts received as prizes and awards.

 (b) EXCEPTION.—Gross income does not include amounts received as prizes and awards made primarily in recognition of religious, charitable, scientific, educational, artistic, literary, or civic achievement, but only if—

 (1) the recipient was selected without any action on his part to enter the contest or proceeding; and

 (2) the recipient is not required to render substantial future services as a condition to receiving the prize or award.

cumstances stated by that ruling, the taxpayer prepared and submitted a winning entry in an essay contest. Pursuant to the terms of that contest, the taxpayer received a check payable to his child, the use of which was entirely without restriction imposed by the sponsors of the contest. The respondent ruled that, under such circumstances, the amount of the prize was includible in the gross income of the taxpayer. While the facts set out in that ruling do not disclose whether the taxpayer could himself have received the prize, it would seem that in all salient respects the facts therein are identical to those before us.

In his ruling, the respondent declared, "The basic rule in determining to whom an item of income is taxable is that income is taxable to the one who earns it." If by this statement the respondent means that income is in all events includible in the gross income of whomsoever generates or creates the income by virtue of his own effort, the respondent is wrong. If this were the law, agents, conduits, fiduciaries, and others in a similar capacity would be personally taxable on the proceeds of their efforts. The charity fund-raiser would be taxable on sums contributed as the result of his efforts. The employee would be taxable on income generated for his employer by his efforts. Such results, completely at variance with every accepted concept of Federal income taxation, demonstrate the fallacy of the premise.

If, on the other hand, the respondent used the term "earn," not in such a broad sense, but in the commonly accepted usage of "to acquire by labor, service, or performance; to deserve and receive compensation" (Webster's New International Dictionary),[4] then the rule is intelligible but does not support the conclusion reached by the respondent either in the ruling in question or in the case before us. The taxpayer there, as here, acquired nothing himself; he received nothing nor did he have a right to receive anything.

In Rev. Rul. 58–127, *supra*, respondent relied heavily, as he does here, on *Helvering* v. *Horst*, 311 U.S. 112 (1940), especially the language of the opinion to the effect that—"The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it." The respondent's reliance on this language is misplaced. The power of disposition assumes possession or the right of possession. To dispose is to part with. Where there is neither possession nor the right to possession, there can be no disposition. In *Helvering* v. *Horst, supra*, the taxpayer, the owner of negotiable bonds, detached from them negotiable interest coupons shortly before their due date and delivered them as gifts to his son who in the same year collected them at maturity. The language of the Court, quoted above and relied upon by respondent, mistakenly we believe, must be read in relation to the facts

---

[4] Cf. *Cold Metal Process Co.* v. *Commissioner*, 247 F. 2d 864, 872 (C.A. 6, 1957).

then before the Court. In this connection, the Court in *Horst* stated unequivocally: "The question here is, whether because one who in fact receives payment for services or interest payments is taxable only on his receipt of the payments, he can escape all tax by giving away his right to income in advance of payment." Plainly, here, petitioners have not given away any *right* of theirs whatsoever. Further, in *Horst*, at page 119, the Supreme Court stated:

The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid. * * * The tax laid * * * upon income "derived from * * * wages, or compensation for personal service, * * * in whatever form paid, * * *" * * * cannot fairly be interpreted as not applying to income derived from interest or compensation when *he who is entitled to receive it* makes use of his power to dispose of it in procuring satisfactions which he would otherwise procure only by the use of the money when received. [Emphasis supplied.]

In *Lucas* v. *Earl*, 281 U.S. 111 (1930), upon which respondent heavily relies, the Supreme Court refused to allow a husband to escape taxes on his income by way of salaries and attorney fees through a contractual arrangement by which he and his wife were to receive, hold, and own such earnings as joint tenants. The Court declared that tax on a salary could not be avoided by the person earning the salary by anticipatory arrangements and contracts. Shortly thereafter, in *Poe* v. *Seaborn*, 282 U.S. 101, 117 (1930), the Supreme Court stated:

In the *Earl* case * * * the husband's professional fees, earned in years subsequent to the date of the contract, were his individual income * * *. The very assignment in that case was bottomed on the fact that the earnings would be the husband's property, else there would have been nothing on which it could operate. That case presents quite a different question from this, because here, by law, the earnings are never the property of the husband, * * *

In *Harrison* v. *Schaffner*, 312 U.S. 579, 580, 582 (1941), the Supreme Court stated that the rule applicable to an anticipatory assignment of income applies when the assignor is *entitled* at the time of the assignment to receive the income at a future date and is vested with such a right. In the instant case, petitioners themselves received nothing and were *never entitled* to anything. What was said in the early case of *Marion Stone Burt Lansill*, 17 B.T.A. 413, 423 (1929), affd. 58 F. 2d 512 (C.A.D.C. 1932), seems appropriate here:

The right in the taxpayer to receive the income at the time it is attributed and taxed to him is likewise not essential, where, as in the *Old Colony, Boston & Maine,* and *Rensselaer* and *Rosenwald* cases, *supra,* the taxpayer has by his own volition chosen to dispose of the right to receive income while retaining that from which the income is derived. The volition in disposing of the right is important, *for while all will agree that one who never received or had a right to receive or who has involuntarily lost it should not be taxed,* it is also plain that his voluntary exercise of the right to dispose of the income before receipt may be just as valuable and important practically as its exercise after receipt. * * * [Emphasis supplied.]

It cannot be argued that Paul voluntarily gave up *his* right to get the annuity policy and designated his daughter to receive it in his place. There was no discretion on his part; the choice was to accept the terms of the contest or reject them.

In the case before us, the taxpayer, while he had no power to *dispose* of income, had a power to appoint or designate its recipient. Does the existence or exercise of such a power alone give rise to taxable income in his hands? We think clearly not. In *Nicholas A. Stavroudes*, 27 T.C. 583, 590 (1956), we found it to be settled doctrine that a power to direct the distribution of trust income to others is not alone sufficient to justify the taxation of that income to the possessor of such a power. See also *Bateman* v. *Commissioner*, 127 F. 2d 266 (C.A. 1, 1942).

Granted that an individual cannot escape taxation on income to which he is entitled by "turning his back" upon that income, the fact remains that he must have received the income or had a right to do so before he is taxable thereon. As stated by the court in *United States* v. *Pierce*, 137 F. 2d 428, 431 (C.A. 8, 1943) :

The sum of the holdings of all cases is that for purposes of taxation income is attributable to the person entitled to receive it, although he assigns his right in advance of realization, and although, in the case of income derived from the ownership of property, he transfers the property producing the income to another as trustee or agent, in either case retaining all the practical benefits of ownership.

Section 1 (a) of the 1954 Code imposes a tax on the "income of every individual." Where an individual neither receives nor has the right to receive income, he is not the taxable individual within the contemplation of the statute. There is no basis in the statute or in the decided cases for a construction at variance with this fundamental rule.

Reviewed by the Court.

*Decision will be entered for the petitioners.*

———

Dawson, *J.*, concurring: *Harrison* v. *Shaffner*, 312 U.S. 579 (1941), settled the proposition that there can be no anticipatory assignment of income unless the assignor is entitled at the time of assignment to receive the income at a future date and is vested with such a right. Paul Teschner was at no time "vested with the right to receive income" under the rules of the contest and, therefore, could not possibly "escape the tax by any kind of anticipatory arrangement." Consequently, the cases cited by the dissent, *Lucas* v. *Earl*, 281 U.S. 111 (1930), *Helvering* v. *Horst*, 311 U.S. 112 (1940), and *Helvering* v. *Eubank*, 311 U.S. 122 (1940), all of which held that "one *vested with the right to receive income* [does] not escape the tax by any kind of

anticipatory arrangement, however skillfully devised," *Harrison* v. *Shaffner*, *supra* at 582 (emphasis supplied), are inapposite here.

It is true that a taxpayer having the right to dispose of income would be taxable on the exercise of such a right where the disposition results in an economic benefit to him. However, in the instant case Paul Teschner had no *right of disposition*, but only a *duty* under the contest rules to designate a person under the age of 17 years, 1 month. Compliance with this duty was a *condition precedent* for entry of persons over that age into the contest. While it might be said concomitantly that there was a right to designate to *whom* the prize would go if it *were* won, no economic benefit could be conferred upon anyone when this right was exercised since there was no income upon which such a right of designation could operate at the time the designation was made. If those who disagree with this result fear the prize (annuity policy) will escape taxation, there is no problem because it would appear to be taxable to the daughter under the provisions of section 74, I.R.C. 1954.

MULRONEY, *J.*, agrees with this concurring opinion.

---

ATKINS, *J.*, dissenting: It is a well-settled principle of our income tax law that personal earnings are taxable to the earner, and that cases involving the taxation of personal earnings are not to be decided by attenuated subtleties. *Lucas* v. *Earl*, 281 U.S. 111, in which the Supreme Court held an anticipatory assignment of future personal earnings to be ineffective to relieve the earner of tax. The Court stated:

A very forcible argument is presented to the effect that the statute seeks to tax only income beneficially received, and that taking the question more technically the salary and fees became the joint property of Earl and his wife on the very first instant on which they were received. We well might hesitate upon the latter proposition, because however the matter might stand between husband and wife he was the only party to the contracts by which the salary and fees were earned, and it is somewhat hard to say that the last step in the performance of those contracts could be taken by anyone but himself alone. But this case is not to be decided by attenuated subtleties. It turns on the import and reasonable construction of the taxing act. There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew.

The annuity policy which Paul won resulted from his personal efforts. The fruit of his labor consisted of the payment of the award to his designee, his daughter. His efforts alone generated the income in question; and it is a matter of no consequence that, under the rules of the contest, such income could not be paid to him, for he had the

power to control its disposition. He in fact exercised that power when he entered the contest, by designating the natural object of his bounty, his daughter, as the recipient of any prize which he might win. The exercise of such power, with resultant payment to the daughter, constituted the enjoyment and hence the realization of the income by Paul. In the circumstances he should be fully charged with the income. Cf. *Helvering* v. *Horst*, 311 U.S. 112, and *Helvering* v. *Eubank*, 311 U.S. 122. There is no more basis here for narrowing the broad scope of the holding in *Lucas* v. *Earl* than there was in the *Horst* and *Eubank* cases. The decision of the majority herein rests upon "attenuated subtleties" similar to those disapproved, first in *Lucas* v. *Earl* and then again in *Burnet* v. *Leininger*, 285 U.S. 136, *Helvering* v. *Horst*, *Helvering* v. *Eubank*, *Harrison* v. *Schaffner*, 312 U.S. 579, and *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260.

TIETJENS, OPPER, RAUM, WITHEY, PIERCE, and SCOTT, *JJ.*, agree with this dissent.