RICHARD T. ARMANTROUT AND LOIS ARMANTROUT,[1] ET AL., PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4344–75, 4460–75, 4461–75. Filed March 23, 1977.

*Paul A. Teschner,* for the petitioners.
*Rodney J. Bartlett,* for the respondent.

---

[1] Cases of the following petitioners are consolidated herewith: Francis H. Pepper and Elizabeth Pepper, docket No. 4460–75; and Llewellyn G. Owens and Ann H. Owens, docket No. 4461–75.

GOFFE, *Judge:* The Commissioner determined deficiencies in the Federal income tax of petitioners as follows:

| Petitioners | Taxable year | Docket No. | Deficiency |
|---|---|---|---|
| Richard T. and Lois Armantrout.......... | 1971 | 4344–75 | $258.98 |
| | 1972 | 4344–75 | 628.61 |
| | 1973 | 4344–75 | 1,069.56 |
| Francis H. and Elizabeth Pepper.......... | 1973 | 4460–75 | 922.17 |
| Llewellyn G. and Ann H. Owens.......... | 1971 | 4461–75 | 418.86 |

Upon joint motion of the parties, these cases were consolidated for trial, briefing, and opinion.

The sole issue for decision is whether petitioners should have included in income amounts paid to their respective children for education expenses by the "Educo" trust which was funded by petitioners' employer.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, the supplemental stipulation and second supplemental stipulation of facts, and the attached exhibits are incorporated by this reference.

Petitioners Richard T. and Lois Armantrout, husband and wife, who resided in Lake Mills, Wis., at the time the petition was filed herein, filed joint Federal income tax returns for the taxable years 1971, 1972, and 1973 with the Internal Revenue Service Center, Kansas City, Mo. Petitioners Francis H. and Elizabeth Pepper, husband and wife, also resided in Lake Mills, Wis., at the time of filing their petition herein. The Peppers filed a joint Federal income tax return for the taxable year 1973 with the Internal Revenue Service Center, Kansas City, Mo. Petitioners Llewellyn G. and Ann H. Owens, husband and wife, who resided in Glenview, Ill., at the time of filing their petition herein, filed a joint Federal income tax return for the taxable year 1971 with the Internal Revenue Service Center, Kansas City, Mo.

Hamlin, Inc., a Delaware corporation (Hamlin), is engaged in the business of manufacturing, distributing, and selling electronic components. During the taxable years 1971 through 1973, petitioner Richard T. Armantrout was employed by Hamlin as vice president in charge of marketing. Petitioner Francis H. Pepper was employed as plant manager during the

taxable year 1973. Petitioner Llewellyn G. Owens was employed as secretary-treasurer throughout the taxable year 1971.

Educo, Inc. (Educo), a Delaware corporation, is engaged in the business of designing, implementing, and administering college education benefit plans for corporate employers.

Sometime in 1969, petitioner Llewellyn G. Owens noticed an advertisement in the Wall Street Journal which outlined, in a general way, the potential benefits of the Educo plan. Upon subsequent investigation, Mr. Owens suggested that such a plan be implemented by Hamlin, Inc.

On September 2, 1969, Hamlin entered into an agreement with Funds for Education, Inc., a Delaware corporation. Subsequently, on November 17, 1969, Funds for Education changed its corporate name to Educo, Inc.

Pursuant to the agreement, Educo undertook to administer an Educo education plan to provide funds for college expenses for the children of certain key employees of Hamlin. Hamlin, upon becoming a participant of the Educo plan, agreed to make contributions to the Continental Illinois National Bank & Trust Co. of Chicago which acted as trustee under a trust agreement entered into with Educo on December 9, 1969.

Pursuant to the Educo plan, children of Hamlin's key employees named in the enrollment schedules which formed a part of the plan would be entitled to receive sums from the trustee to defray college education expenses. Upon receipt of the appropriate information from Hamlin, Educo would direct the trustee to pay, in accordance with the enrollment schedule, the expenses incurred by the employees' children in attending a college or university, trade or vocational school.

The education expenses which could be defrayed under the terms of the plan included:

(1) Tuition, registration, and other fees payable to any college;

(2) Rental of living quarters provided by a college or a reasonable allowance for same, if not so provided;

(3) Cost of meals if provided by a college or by a club, fraternity, sorority, or boarding house, or a reasonable allowance for such meals if not so furnished by any of the foregoing;

(4) Cost of books, supplies, equipment, and other extras required to be purchased in connection with attendance at any such college;

(5) Hospitalization insurance; and

(6) Such other expenses as, in the opinion of Educo, Inc., were necessary and reasonable and directly related to the education of the child.

The Educo plan as implemented by Hamlin provided for a maximum of $10,000 to be made available to the children of any one employee with an upper limit of $4,000 available to any one child. Payments to or on behalf of a child enrolled in the plan were limited during any one year to one-fourth of the total amount scheduled for that child; however, the unused funds of a prior year could be used to defray expenses in a subsequent academic year. Children otherwise qualified who did not utilize any of the available funds before reaching age 21 or within 2 years after completing the 12th grade would be ineligible to participate in the plan.

In adopting the Educo plan, it was Hamlin's intention to make available sufficient funds to enable at least two children of each key employee to attend college. Consonant therewith, the plan was in general administered so that $4,000 was scheduled to be received by each of the employee's two eldest children while $2,000 would be provided to a third younger child; funds not utilized by the older children were in turn made available to younger children, thus it was possible that more than three children of each key employee could ultimately participate in the plan. However, this administrative policy was not required by the terms of the plan and, moreover, prior to the adoption of the first enrollment schedule the employee-parents were given the opportunity to allocate the available funds within the maximum allowed by the plan to their children in amounts different from those described above.

Children would be designated to receive the trust benefits through the use of enrollment schedules which could be changed or amended. Designated to receive benefits pursuant to enrollment schedule I dated October 15, 1969, were the

children of petitioners Richard T. Armantrout and Llewellyn G. Owens in the following amounts:

| Mary Lynn Armantrout | $4,000 | Martha G. Owens | $4,000 |
| Thomas Richard Armantrout | 4,000 | Lawrence T. Owens | 4,000 |
| Katherine Ann Armantrout | 2,000 | | |

Enrollment schedule II dated March 1, 1973, provided that the children of petitioner Francis Pepper were eligible to receive according to the terms of the plan the following amounts:

| Francis Pepper | $2,000 |
| Nancy Pepper | 4,000 |
| Gary Pepper | 4,000 |

Petitioners' children who received the benefits from the Educo plan during the years 1971, 1972, and 1973 were born at the following respective times:

| Mary Armantrout | 7/28/52 | Nancy Pepper | 1/25/54 |
| Thomas Armantrout | 6/17/53 | Gary Pepper | 1/25/54 |
| Katherine Armantrout | 6/12/55 | Lawrence T. Owens | 2/13/52 |
| Francis Pepper | 1/5/52 | | |

During the taxable years under consideration, amounts were distributed by the Continental Illinois National Bank & Trust, the trustee under the Educo plan, to petitioners' children as follows:

| | Taxable years | | |
| Recipient | 1971 | 1972 | 1973 |
| Mary Armantrout | $640.73 | $1,084.18 | $853.74 |
| Thomas Armantrout | 395.12 | 905.59 | 1,116.15 |
| Katherine Armantrout | 0.00 | 0.00 | 1,000.00 |
| Francis Pepper | 0.00 | 0.00 | 851.88 |
| Nancy Pepper | 0.00 | 0.00 | 1,000.00 |
| Gary Pepper | 0.00 | 0.00 | 1,000.00 |
| Lawrence T. Owens | 1,500.00 | 0.00 | 0.00 |

If any child covered by the Educo plan did not utilize the funds scheduled for his benefit within the period prescribed by the plan, Hamlin could enroll a replacement child of the

same or younger age to use any unused funds. Moreover, Hamlin could allocate the unused funds to children already enrolled in the plan or it could apply the funds toward the reduction of its future obligation to make payments to the Educo trust.

Typically, payments of the children's expenses were made directly to the school or creditor providing the service which qualified under the Educo plan. On a few occasions, parents of children attending college made advances for the educational expenses of their respective children which were reimbursed by the Educo trust. In addition, payments were on occasion made directly from the Educo trust to the students attending college to reimburse the purchase of supplies and other qualifying expenses incurred by the students.

The Hamlin Educo plan was adopted, in part, to relieve Hamlin's most important employees from concern and trepidation about the cost of providing a college education for their children and, thus, enable those employees to better perform their duties as employees of Hamlin. Moreover, it was felt by Hamlin that the Educo plan was a benefit which the key employees wanted it to provide. The cost of higher education would be defrayed by the Educo trust for all the children enrolled in the plan without regard to any objective scholastic criteria such as admissions test scores, rank in high school class, or financial need.

Children eligible to participate in the Educo plan were those whose parents were regarded as key employees in the Hamlin organization and although the selection of such employees bore a rough correlation to salary, the determinative factor was the employees' value to the company. Compensation of key employees who did not have children was not increased to counterpoise the effect of the Educo plan on those employees with children. Children of lesser employees could be included as the value of the parents to Hamlin increased.

The employees whose children participated in the Educo plan had no right or claim to the benefits which flowed from the trustees in discharge of their children's educational expenses as outlined in the plan. It was, moreover, impossible for the parent of any child enrolled in the plan to receive

benefit from any unused portion of the available funds not expended by their children.

Under the terms of the plan, benefits were payable in accordance with the applicable enrollment schedule to defray the costs incurred by the employee's child in attending college. However, should an employee-parent cease to be employed by Hamlin, the plan would become inoperable for each of his children except that education expenses incurred prior to the termination of the parent's employment would continue to be eligible for payment in accordance with the terms of the Educo plan.

Considering the Educo plan to be a unique benefit made available to its most important employees, Hamlin would describe in a general way the nature and advantages offered by the plan to prospective employees. The existence of the plan has enabled Hamlin to be successful in recruiting and retaining key employees and to do so without the assistance of higher salaries competitive with those in larger urban areas.

By statutory notices of deficiency issued to the respective taxpayers in the cases consolidated herein, the Commissioner determined that the amounts distributed by the Educo trust were scholarships which formed a part of the employees' compensation and were directly related to each employee's pattern of employment and, therefore, compensation for services includable in gross income.

#### OPINION

Respondent contends that the amounts distributed by the Educo trust in discharge of certain of the educational expenses of petitioners' children constitute taxable income to petitioners because the payments were attributable to petitioners' employment relationship with Hamlin rather than on the basis of any competitive criteria such as need, motivation, or merit.

Petitioners in essence argue, however, that while the amounts distributed by the Educo trust were perhaps "generated" by their efforts as employees of Hamlin, they do not constitute gross income because they were neither beneficially received by them nor did they have the right to receive such distributions and, moreover, because they did not possess an ownership interest in such amounts. In addition,

petitioners assert that the mere realization of some familial satisfaction is not sufficient to occasion the recognition of income. For reasons which will hereinafter be expressed, we hold that the distributions from Educo trust to petitioners' children were in the nature of deferred compensation to petitioners and, therefore, includable in their gross income according to the provisions of section 83.[2]

Proper analysis of this issue must begin with the notion often called "the first principle of income taxation: that income must be taxed to him who earns it." *Commissioner v. Culbertson*, 337 U.S. 733, 739–740 (1949). It is also important to recall that the income tax consequences of a particular transaction are not to be accorded by reference to "anticipatory arrangements" or "attenuated subtleties" but rather income must be attributed to the tree upon which it grew. *Lucas v. Earl*, 281 U.S. 111 (1930). In addition, in apportioning the income tax consequence of a particular factual pattern, it is the substance of the transaction which must govern. *Gregory v. Helvering*, 293 U.S. 465 (1935); *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945).

While we might agree with petitioners that mere realization of some "familial" satisfaction is perhaps not sufficient to occasion a tax, we must nevertheless take cognizance of the context in which such a benefit accrues. When such a benefit is created in an employment situation and in connection with the performance of services, we are unable to conclude that such a benefit falls outside the broad scope of section 61. See *Commissioner v. Smith*, 324 U.S. 177, 181 (1945). This view is especially compelling herein because there is a specific, additional, and identifiable cost incurred by petitioners' employer.

We find *Kohnstamn v. Pedrick*, 153 F.2d 506 (2d Cir. 1945), to be inapposite to the issue presented. In *Kohnstamn*, the Commissioner sought to charge the husband with income earned on investments made by his wife from income which was paid to her by a trust to support and maintain their children. The Government's theory was that because the mother consulted him in the management of the income, he

---

[2] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

"generated" it and was, therefore, taxable on that income. The court held that the amounts earned on the trust earnings were not taxable to the husband because the realization of some familial satisfaction, without more, was not sufficient to occasion a tax burden. In our view, the *Kohnstamn* rationale does not extend to amounts paid to family members which are clearly attributable and related to the performance of services by another family member.

While *Alexander v. Commissioner*, 194 F.2d 921 (5th Cir. 1952), and *Alexander v. Commissioner*, 190 F.2d 753 (5th Cir. 1951), support the proposition that the mere "generation" of income is not synonymous with earning income, both cases are clearly distinguishable and at bottom simply hold that one merely possessing managerial control over income-producing property is not to be burdened with a tax on that income but rather that income produced must be taxed to the owner of such property.

In any event, we do not understand respondent's position to be that the mere "generation" of income is sufficient to occasion a tax. Instead, respondent argues that the amounts paid by the Educo trust were "generated" by petitioners in connection with their performance of services for Hamlin and were, therefore, compensatory in nature. We find this view to be amply supported by the record. The Educo plan was adopted by Hamlin to relieve its most important employees from concern about the high costs of providing a college education for their children. It was hoped that the plan would thereby enable the key employees to render better service to Hamlin.

Employees eligible to participate were selected on the basis of their value to the company; selection was thus inexorably linked to the quality of the employee's performance of services. Moreover, the eventual payment of benefits by the Educo trust was directly related to petitioners' employment. This is illustrated quite graphically by the fact that only those expenses incurred by petitioners' children while the parent was employed by Hamlin were covered by the plan.

In recruiting new employees, Hamlin would describe the benefits accorded by the plan and how an employee could become entitled to participate upon attaining a level at which he was sufficiently valuable to the company. The plan was

successful in aiding the recruitment and retention of key employees. Moreover, the utilization of the Educo plan at the corporate level was clearly a substitute for salary because it enabled Hamlin to compete with employers in more populated areas which paid higher salaries.

It is fundamental that anticipatory arrangements designed to deflect income away from the proper taxpayer will not be given effect to avoid tax liability. *United States v. Basye*, 410 U.S. 441 (1973); *Lucas v. Earl*, 281 U.S. 111 (1930). In substance, by commencing or continuing to be employed by Hamlin, petitioners have allowed a portion of their earnings to be paid to their children. Petitioners have acquiesced in an arrangement designed, at least in part, to shift the incidence of tax liability to third parties unconnected in any meaningful way with their performance of services.

Petitioners arduously suggest, however, that the doctrine of *Lucas v. Earl, supra,* can have no application herein because they neither received nor possessed a right to receive the amounts distributed to their children by the Educo trust.[3] In support of this contention, petitioners rely on *Commissioner v. First Security Bank of Utah*, 405 U.S. 394 (1972), and *Paul A. Teschner*, 38 T.C. 1003 (1962).

In *First Security Bank of Utah*, a holding company organized a subsidiary corporation to engage in the insurance business (Life); another subsidiary corporation was a national bank (Bank). Bank originated credit life insurance which was placed with an independent insurance company; however, pursuant to a treaty of reinsurance, the independent company reinsured the business with Life. The Commissioner sought to allocate a portion of Life's premium income to Bank as compensation for originating and processing the credit life insurance. Court decisions construing 12 U.S.C. section 92, however, prohibited a national bank from acting as an insurance agent, thus distinguishing cases in which the taxpayer had actually received funds in violation of the law, see, e.g., *James v. United States*, 366 U.S. 213 (1961). The Court held that the assignment-of-income doctrine and section

---

[3] Respondent has withdrawn his alternative theory advanced at trial that the amounts distributed discharged petitioners' legal obligations of support or other contractual obligations.

482 could have no application where a taxpayer has no right as a matter of law to receive the income in question.

The rationale was that a taxpayer who did not actually receive any income did not possess sufficient dominion and control to occasion a tax where he was prevented by law from actual receipt of the income. The factual pattern in *Teschner* is analogous and much the same kind of analysis was applied. The taxpayer entered a contest by submitting two statements on a form supplied by the sponsor of the contest. The contest rules provided that only persons under age 17 were eligible to receive any prize; contestants over that age were required to designate a person under age 17 to receive the prize. The taxpayer, an adult, designated his daughter as recipient should either of his entries be selected. The taxpayer's inability to win a prize for himself was due to the contest rules and was in no way attributable to any action taken by him. One of the taxpayer's entries was selected and a prize was awarded to his daughter. The Commissioner contended that the prize was includable in the taxpayer's gross income under the principles of *Lucas v. Earl, supra.* This Court held that the taxpayer's mere power to direct the distribution of the prize was not sufficient to tax its value as income to him because he did not possess a right to receive the prize under the contest rules; thus, it was not includable in his gross income.

While the facts in these cases are analogous to those presented herein, there are crucial distinctions which mandate a different result.

Hamlin and petitioners were acting at arm's length in an employment situation. By accepting employment or continuing to be employed by Hamlin, cognizant of the trust payments, petitioners in effect consented to having a portion of their earnings paid to third parties. There is no evidence to indicate that petitioners were unable to bargain with Hamlin about the terms of their employment and the available avenues of compensation. Hamlin could have made available a direct salary benefit to those employees who so desired, and by supplemental enrollment schedule continued to make available the Educo plan to others. We also think significant petitioners' power, whether exercised or not, to designate which of their children would be enrolled in the Educo plan.

Under the facts of this case, such power lends substantial compensatory flavor to the Educo arrangement. Petitioners were in a position to influence the manner in which their compensation would be paid; choosing to acquiesce in the payments to the Educo plan was in our view tantamount to an "anticipatory arrangement" prohibited by *Lucas v. Earl, supra.* By contrast, in neither *First Security Bank of Utah, supra,* nor in *Paul A. Teschner, supra,* did such a potential for "arm's-length" negotiation exist. Moreover, the prohibition on petitioners' receipt of the payments in this case was not imposed by a rule of law as in *First Security Bank of Utah,* or as the result of a rule imposed by an independent third party as in *Teschner.* Petitioners herein were not prohibited from receiving income within the meaning of *First Security Bank of Utah* or *Teschner.*

To find the rationale of these cases controlling here would be to ignore the consensual nature of the method of compensation adopted by Hamlin and the economic realities existing in an employer-employee situation. It is clear that a taxpayer may not avoid taxation by entering into an anticipatory assignment of income; to allow petitioners to enter into such an arrangement through the back door simply by allowing the employer to make the necessary arrangements would be highly anomalous and inconsistent with the rationale of *Lucas v. Earl, supra,* and *United States v. Basye,* 410 U.S. 441 (1973). We can only conclude that this arrangement provided petitioners with additional and deferred compensation as determined by the Commissioner and should have been so reported; the plan was, in effect, a clever and skillfully designed arrangement which cannot be given effect for tax purposes.

In their final salvo, petitioners maintain that because they never received, nor had the power to receive, the amounts paid to their children by the Educo trust, to tax them on such amounts would violate both the 5th and 16th Amendments to the Constitution of the United States. Under the circumstances of the case as previously described, we find this contention to be without merit. We have recently considered such a contention in *Miriam Sakol,* 67 T.C. 986 (1977), and we adhere to the views expressed therein. Suffice it to say that realization of income in hand is not prerequisite to

realization of taxable income. *Harrison v. Schaffner,* 312 U.S. 579 (1941); *Helvering v. Horst,* 311 U.S. 112 (1940). We are unable to conclude that to include the amounts paid by the Educo trust in petitioners' income is so arbitrary and unreasonable as to constitute a violation of the due process clause. See *Williamson v. Lee Optical Co.,* 348 U.S. 483 (1955); *Miriam Sakol, supra.*

Although the legislative history is somewhat vague and the parties[4] have chosen not to argue this case based upon interpretation of section 83, we must point out that our decision is supported by the specific language of section 83 which provides:

(a) GENERAL RULE.—If, in connection with the performance of services, property is transferred to *any person* other than the person for whom such services are performed, the excess of—

\* \* \*

shall be *included in the gross income of the person who* performed such services \* \* \*

[Emphasis added.]

Accordingly, we hold that the amounts paid by the Educo trust constituted additional compensation to petitioners and, therefore, are includable in gross income.

*Decisions will be entered for the respondent.*

---

[4] Respondent merely states on brief that the trust payments are taxable in the year paid under sec. 83.