JOHN C. SAUNDERS and ELLEN W. SAUNDERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Saunders v. Commissioner
Docket No. 14942-79
United States Tax Court
T.C. Memo 1982-655; 1982 Tax Ct. Memo LEXIS 93; 45 T.C.M. (CCH) 82; T.C.M. (RIA) 82655; November 15, 1982. Robert C. Taylor and Bradford D. Corrigan, Jr., for the petitioners. Helen T. Repsis, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the taxable years 1976 and 1977 in the amounts of $2,959.99 and $5,359.62, respectively. The sole issue for decision is whether certain funds distributed to petitioners' children by an educational benefit trust established by John C. Saunders' professional corporation represented compensation taxable to petitioners under the assignment of income doctrine. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners John C. and Ellen W. Saunders, husband and wife, who resided in Denison, Texas, at the time of the filing of their petition herein, filed joint U.S. individual income tax returns for the years 1976 and 1977 with the Internal Revenue Service Center, Dallas, Texas. Dr. and Mrs. Saunders have three children, Patricia, William and Steven. The respective birth dates of these three children are: May 17, 1952; May 28, 1955; and May 28, 1955. John C. Saunders, *95 M.D. and Associates is a professional association incorporated under the laws of the State of Texas in 1971. The corporation was organized for the purpose of engaging in the practice of medicine. Since the time of its incorporation, Dr. Saunders has been its president and, additionally, has owned 95 percent of its outstanding shares. Dr. Saunders and the other individual owning the remaining 5 percent of the shares of the corporation have been the only officers and directors of the corporation since the time of its incorporation. The only other persons employed by the corporation since the time of its incorporation have been nurses and receptionists. Dr. Saunders, since the time of incorporation, has devoted 100 percent of his time to the business of the corporation. College Educational Plans, Inc., is a corporation duly incorporated under the laws of the State of Texas. College Educational Plans, Inc. (Educational Plans), is in the business of marketing educational benefit plans to employers. Educational Plans designs, implements and administers such plans. Under a plan, an employer will make contributions to a trust to fund the college education of certain designated children *96 of his employees. Dr. Saunders' corporation adopted such a plan effective June 1, 1974, by entering into an agreement with the Citizens National Bank of Denison and Educational Plans. The Citizens National Bank of Denison agreed to serve as the trustee of a trust established pursuant to the plan. The bank agreed to hold, manage and disburse the funds contributed by Dr. Saunders' corporation to the plan. Educational Plans agreed to be the administrator of the plan. In the agreement entered into, the following reasons were given for the corporation's adoption of the plan: (1) it is in its best interest to provide a means for funding all or a substantial part of the cost of collegiate and graduate education and uninsured medical expenses which might be incurred by employees' children; (2) that the Plan will serve to attract employees, enhance employee morale, and improve productivity; and (3) encourage employees to remain in its service. Under the plan, those children of the corporation's full-time employees whose names appeared on the benefit schedule attached to the agreement would be eligible for benefits under the plan. However, any children designated had to be enrolled *97 in at least the first grade. Additional children would become eligible for benefits if the corporation as participating employer so chose to designate them. The corporation could add additional children of its full-time employees to the benefit schedule on June 1 of any year thereafter. The children designated as eligible for benefits in the benefit schedule attached to the agreement were Dr. Saunders' three children, Patricia, William and Steven. The benefit schedule listed the years of college or graduate school in which the children would be eligible to receive benefits, the amount of the annual scholarship that each was to receive and the total amount of benefits each might receive for all of the years in which they were eligible to receive benefits under the plan. The benefit schedule attached to the agreement provided as follows: BENEFIT SCHEDULE Years of
Annual
Total
Name of Child
School
Scholarship
Benefits
Patricia E. Saunders
4 *
$4,000
$16,000
William C. Saunders
4
4,000
16,000
Steven W. Saunders
4
4,000
16,000
$48,000
The corporation was *98 to make contributions which actuarily calculated would be sufficient to provide funds with which to pay the specified total scholarship benefit of a child. Thus, each child designated by the corporation as eligible for the plan would have a benefit account maintained for him by Educational Plans. Educational Plans was to notify the participating employer of the required amounts to be contributed on a contribution date. Under the agreement, the corporation was to make contributions on July 31 and January 31 of each year. The agreement provided that if any employee of the participating employer terminated his employment, other than by death, disability, or retirement, then any child of his, even though designated as a child eligible for the plan, would become ineligible to receive benefits. Further, it was generally provided that any beneficiary who failed to enroll in a college or university within 4 years after his completion of high school would become ineligible to receive benefits. This 4-year period, however, would be extended by any period of military service. For any beneficiary who failed to use the benefits to which he was entitled, the participating employer was given *99 the right to name a substitute, who was also a child of a full-time employee. The agreement provided, in pertinent part, the following as to the payment of scholarship benefits: 6. Payment of Scholarship Benefits.
(a) Upon receiving information in form satisfactory to [Educational Plans], [Educational Plans] shall direct the Trustee to pay the educational and uninsured medical expenses of each Beneficiary eligible to participate under the Plan. Such direction shall be in writing and shall include any information deemed reasonably necessary by [Educational Plans]. Educational and uninsured medical expenses shall include the following expenses incurred by each such Beneficiary in connection with attending a college or university: (1) Tuition, matriculation, and other fees; (2) Medical care as defined in Section 213 of the Internal Revenue Code and the regulations thereunder; (3) Textbooks and other necessary educational materials; (4) Dormitory fees or a reasonable rental allowance for off-campus living; (5) A reasonable allowance for meals which may be paid to the appropriate college or university or directly to the Beneficiary, *100 taking into account the total cost of on-compus meals, where possible; (6) Such other expenses as may be necessary and reasonable which are directly related to the college or university education of the Beneficiary. If a Beneficiary's educational and uninsured medical expenses are expected to exceed such Beneficiary's total annual benefit, [Educational Plans] shall direct payment in the order of priority set forth in (1) through (6) of Section 6(a) herein. (b) In directing the Trustee to make payment of such educational and uninsured medical expenses from time to time, [Educational Plans] shall be entitled to rely on the correctness and genuineness of any statement, bill or evidence received by [Educational Plans] from any department of any college or university or from any hospital, clinic, or physician or dentist, or from any Beneficiary or from the Participating Employer, and [Educational Plans] and the Trustee do not assume any liability in directing or making any such payment of educational or uninsured medical expense on the basis of such evidence. The agreement provided that any unused benefits remaining in a beneficiary's account, due to his completion of *101 his college education prior to the anticipatec completion date, could be carried forward and applied against any educational and uninsured medical expenses of the beneficiary as a result of his attendence at another college or university or to pay any educational and uninsured medical expense incurred from his undertaking graduate studies. Any remaining amounts still in the beneficiary's account were to be used to reduce the future contributions required of the participating employer for other children designated as eligible for benefits under the plan. Subsequently, on June 15, 1977, Dr. Saunders' corporation amended the plan previously adopted on June 1, 1974, by entering into a new agreement with Citizens National Bank of Denison and Educational Plans. The major difference between the old plan and the new plan was that under the new plan a beneficiary would receive loan benefits instead of scholarship benefits. The benefit schedule attached to the new agreement was identical in all respects to that attached to the previous agreement. The children designated as beneficiaries were Dr. Saunders' three children, Patricia, William and Steven. The benefits were to be available *102 for the same number of years the child was enrolled in college or graduate school and the amount of annual benefit and total benefits that each child would be entitled to receive were the same. However, instead of being an outright grant, the funds provided were to be a loan to the individual beneficiary. In the administrative agreement, which set forth in detail the provisions of the new plan, it was stated that the plan had been approved by the board of directors of the participating employer and that it was intended that the contributions be deductible under section 162. [1] The agreement further stated that the purposes of the plan were the following: (1) to further the education of children of certain employees by providing loans to pay certain educational expenses incurred by the children; (2) to provide information regarding governmental, charitable and other sources of scholarships and educational loans to children of all employees; (3) to encourage worthwhile volunteer and charitable activities and service; and (4) to encourage good scholarship. *103 The administrative agreement further provided, in pertinent part, as follows: c. Upon receipt of any loan benefit, a Beneficiary shall be required to execute, in form satisfactory to [Educational Plans] a note or other written agreement which provides for repayment of the principal amount borrowed, together with simple interest thereon at the rate of four (4%) per cent per annum, in equal installments payable annually or quarterly (at the option of [Educational Plans]) over a period beginning one year after the date on which Beneficiary ceases to be an enrolled student at a college or university and ending ten (10) years after such date except that (1) Interest shall not accrue on the loan, and installments need not be paid, during any period during which Beneficiary is an enrolled student at a college or university; (2) Interest shall not accrue on the loan, and installments need not be paid, during any period during which beneficiary is a member of the Armed Forces of the United States, or is in service as a volunteer under the Peace Corps Act, or is engaged in the full-time practice of medicine in an area in the United States that has been designated by the Department *104 of Health, Education and Welfare as a physician deficient area, or is engaged in service as a full-time teacher in a public or other non-profit elementary or secondary school or college or university in a state; (3) Any such period described in Paragraph (1) or (2) above shall not be included in determining the ten (10) year period during which the repayment must be completed; (4) The Beneficiary may at his option accelerate repayment of the whole or any part of the loan without penalty; (5) Twenty-Five (25%) per cent of the total amount of such loan plus interest thereon shall be cancelled for each complete year of service in an occupation described in Paragraph (2) above; (6) One (1%) per cent of the total amount of such loan plus interest thereon shall be cancelled for each ten (10) hours of service as a volunteer for any charitable organization qualified under Section 501 (c)(3) of the Internal Revenue Code of 1954 upon certification of performance of such volunteery service, in form satisfactory to [Educational Plans] by a responsible official of said charitable organization; (7) The total loan benefit advance during any single year shall be *105 cancelled upon certification in form satisfactory to [Educational Plans] of the Beneficiary's maintaining for the year in question, in the college or university attended, a superior scholastic record as evidenced by any one of the following criteria: (a) Beneficiary maintained a Grade Point Ratio of at least 3.0 on a 4.0 Grading System; (b) Beneficiary was ranked in the top twenty-five (25%) per cent of his class; or (c) Beneficiary maintained, under the grading system in effect at the college or university attended, a scholastic record equivalent to a "B" Average". Dr. Saunders' two children, William and Steven Saunders, received together during the year 1976, a total of $5,750 under the original educational benefit plan established by the corporation on June 1, 1974. In 1977, these two children together received a total of $10,600, $3,515.50 of which was received under the old plan and $7,084.50 of which was received under the new plan adopted by the corporation on June 15, 1977. The payments to the children were attributable to contributions made by the corporation either during the year in which the payments were made or during prior years. Citizens National Bank *106 of Denison, the trustee, made each payment upon its receipt of written authorization from Educational Plans. The payments made under the new plan in 1977 were made after two written loan commitments dated, respectively, July 11, 1977 and July 22, 1977, had been executed and delivered to the bank by William and Steven Saunders. Under these loan commitment agreements, the bank, as trustee, agreed to lend each of the two children a sum not to exceed $4,000 to be used for the payment of college expenses authorized by the educational benefits plan for the school year June 1, 1977 through May 31, 1978. The agreement stated that it was anticipated that the money would be advanced in one or more payments and that if the sums advanced covered less than the above-stated $4,000 commitment, the beneficiary would only be obligated to repay the amounts actually received. The loan commitment agreements contained exactly the same terms of payment and provisions for interest as had been specified in the June 15, 1977, plan agreement entered into between Dr. Saunders' corporation, the Citizens National Bank of Denison and Educational Plans. Additionally, two further loan commitments both dated *107 April 3, 1978, were executed and delivered to the bank by William and Steven Saunders. These loan commitments were for the amounts of $651.87 and $632.53, respectively, to pay for college expenses for the school year June 1, 1977 through May 31, 1978. The loan commitment agreements both stated that the money paid to each child was partially from previously unused funds available as of May 31, 1977. All of the amounts paid to William and Steven Saunders due to the execution of the four loan commitment agreements discussed above, were forgiven as a result of both children subsequently achieving a grade point average of at least 3.0 at the college each was enrolled in during the year. William Saunders and his wife reflected on the separate returns filed by each the receipt by William of $5,848.13 of income as a result of the forgiveness of the amounts owed under his loan commitment agreements. Seven Saunders and his wife reflected on the separate returns filed by each the receipt by Steven of $5,867.47 of income as a result of the forgiveness of the amounts owned under his loan commitment agreements. Forms 1099 showing this miscellaneous income, had been submitted to the Internal *108 Revenue Service, and copies of such Forms 1099 were attached to the returns of William and Steven Saunders and their respective spouses. Respondent in his notice of deficiency to Dr. and Mrs. Saunders increased their reported income for 1976 and 1977 by the respective amounts of $5,750 and $10,600 with the following explanation: (b) It is determined that distributions in the amounts of $5,750 and $10,600 made in taxable years 1976 and 1977, respectively, by the College Educational Plan and Trust of John C. Saunders, M.D. and Associates are taxable as income. Accordingly, your taxable income is increased $5,750 and $10,600 for 1976 and 1977, respectively. OPINION Respondent contends that the amounts paid to petitioners' two children pursuant to the educational benefit plan established by Dr. Saunders' corporation in the years in issue, whether denominated as outright scholarship grants or as "loans," in actuality represented the payment of compensation to Dr. Saunders. Petitioners, while not conceding that the amounts paid the children under the original plan were income to Dr. Saunders, argue primarily that the amounts paid under the new plan adopted by Dr. Saunders' employer *109 were loans to the children and cannot be considered as income to Dr. Saunders. Respondent asserts that both the payments made under the original plan and under the amended educational benefit plan were income to Dr. Saunders. He contends that the amounts paid to the children under the amended plan were not bona fide loans, but represented nothing more than a disguised means of compensation of Dr. Saunders by the corporation. The assignment of income doctrine, under which income is taxed to him who earned it, is a fundamental principle of income taxation. United States v. Basye,410 U.S. 441, 450-451 (1973). As was pointed out by the Supreme Court in Lucas v. Earl,281 U.S. 111, 114-115 (1930): But this case is not to be decided by attenuated subtleties. It turns on the import and reasonable construction of the taxing act. There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the *110 statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew. In our view, from this record it is clear that the corporation through the use of an educational benefits trust was furnishing compensation to Dr. Saunders. Dr. Saunders was a 95 percent shareholder and president of the professional service corporation since the time of its incorporation through the years here in issue. Dr. Saunders devoted 100 percent of his time to the medical practice of the corporation. Since the time the corporation adopted an educationl benefit plan on June 1, 1974, only Dr. Saunders' three children were designated as children who would be eligible to receive benefits under the plan. It is clear that the corporation did not enter into these arrangements to provide scholarship benefits because of a detached and disinterested generosity. See Commissioner v. Duberstein,363 U.S. 278, 285-286 (1960). The reasons given in the agreement by which the corporation adopted the plan in 1974 shows that the subsequent scholarship payments were intended *111 to be compensatory in nature. In the agreement, it was stated that the corporation hoped to enhance employee morale, improve productivity and encourage employees to remain with the corporation. The agreement also provided that a child designated as being eligible for the plan would not be entitled to receive benefits if his parent terminated employment with the corporation. Clearly, under prior decisions of this Court, the amounts paid to Dr. Saunders' two children in 1976 and 1977, pursuant to the educational benefit plan as established by the corporation in 1974, represented compensation to Dr. Saunders and we conclude that the amounts paid under the plan as amended in 1977 were likewise compensation to Dr. Saunders rather than bona fide loans to his children. Under the assignment of income doctrine, it is irrelevant that the payments were not made directly to petitioner, but instead were made to his children through the means of a trust established by petitioner's employer. This Court in Armantrout v. Commissioner,67 T.C. 996 (1977), affd. 570 F.2d 210 (7th Cir. 1978), dealt with an educational benefit plan arrangement identical to that adopted *112 by Dr. Saunders' employer in 1974. We held in that case that based on the assignment of income doctrine, the arrangement was ineffective for purposes of the taxpayer-employee avoiding the tax on such compensation. We find, therefore, that Dr. Saunders had income in the amounts of $5,750 in 1976 and $3,015.50 in 1977, as a result of the payments made to his two children pursuant to the educational benefit plan originally adopted by Dr. Saunders' corporation on June 1, 1974. Grant-Jacoby, Inc. v. Commissioner,73 T.C. 700, 707-710 (1980); Armantrout v. Commissioner,supra.[2] These payments represented income to Dr. Saunders regardless of whether one views the applicable statute to be section 61 or section 83. Armantrout v. Commissioner, 570 F.2d at 212, fn. 4, 67 T.C. at 1008. Petitioners contend that the amounts comprising the $7,084.50 received by Dr. Saunders' two children in 1977, pursuant to the new educational benefit plan, are not includable in Dr. Saunders' income as compensation since these amounts were made as bona fide loans to the children by the *113 trust. Petitioners point out that when the loans were subsequently forgiven, each of the children reported the amount of the indebtednesses forgiven as income. Respondent disputes that the $7,084.50 in payments made to the two children were made as bona fide loans. [3]
Whether the amounts received by the children were nontaxable loans to them or constituted compensation to petitioner, is a question of fact. Beaver v. Commissioner,55 T.C. 85, 91 (1970); Fisher v. Commissioner,54 T.C. 905, 909 (1970); Haber v. Commissioner,52 T.C. 255, 266 (1969), affd. 422 F.2d 198 (5th Cir. 1970). The determinative question is whether a bona fide debtor-creditor relationship existed. In order for such a debtor-creditor relationship to have arisen, both parties to the transaction, at *114 the time the funds were furnished, must have had an actual intent to establish such a relationship. Fisher v. Commissioner,supra. at 909-910; Haber v. Commissioner,supra. at 266. Here, each of Dr. Saunders' children executed a loan commitment in order to obtain the funds furnished to him by the trust. Petitioner, at trial, offered the testimony of the president of Educational Plans, the administrator of the corporation's educational benefit plan. The president stated that, assuming none of the conditions for forgiveness had been met, the children would have been obligated to repay the loans and Educational Plans would have taken steps to see that the money was repaid. However, we are not persuaded by such testimony that a true intent to create a debtor-creditor relationship existed. Educational Plans is in the business of retailing educational benefit plans. The original plan designed and marketed by Educational Plans, which was the same plan adopted initially by Dr. Saunders' corporation, was in our view clearly structured for the purpose of providing compensation to an employee, albeit in an indirect fashion, with the hope of *115 having such employee avoid tax on such compensation. Here, although redenominated as loan benefits, the funds to be furnished each of Dr. Saunders' sons were identical in amount and were intended to be used for the same purposes as the scholarship benefit each child was designated to receive under the previous plan. Thus, we heavily dicount the testimony of the president of Educational Plans as self-serving. Moreover, there is strong evidence indicating that no loans were intended. The provisions which would allow the children to forego repayment indicates that the transactions were not loans. Achievement of a grade point of 3.0 for the school year would result in the cancellation of the child's obligation of repayment. The existence of this and other generous provisions for forgiveness are hardly indicative of a normal arm's-length loan, and strongly indicates that no loan was intended. See Berthold v. Commissioner,404 F.2d 119, 122 (6th Cir. 1968), affg. a Memorandum Opinion of this Court. [4] We find that there was no intent to create a bona fide loan. The intention of the parties relates not so much to what the transaction is called, or even what form *116 it takes, as it does to an actual intent that money advanced will be repaid. Berthold v. Commissioner,supra;Commissioner v. Makransky,321 F.2d 598, 600-601 (3d Cir. 1963), affg. 36 T.C. 446 (1961). The payments to the two children pursuant to the new educational benefit plan, although denominated as loans, in actuality represented the payment of compensation to Dr. Saunders. We find that the $7,084.50 received by the two children in 1977 was income to petitioner. Because of certain adjustments in the notice of deficiency not placed in issue by the pleadings, *117 Decision will be entered under Rule 155.
Footnotes
*. Based on 1 year of college remaining and 3 years of graduate school.↩
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. See also, Grams v. Commissioner,T.C. Memo 1980-528↩.
3. Respondent further asserts that it is more than mere coincidence that the educational benefit plan was changed to provide "loan" benefits rather than scholarship benefits on June 15, 1977, less than three months after the Court's decision in Armantrout v. Commissioner,67 T.C. 996↩ (1977) was filed on March 23, 1977.
4. There is a statement in the administrative agreement setting forth the provisions of the new plan that the corporation fully intended its contributions to be deductible under section 162. When this statement is considered in conjunction with the other provisions, it is clear that the corporation which established and funded this trust never contemplated that any repayment of the so-called loans would be made. The reasonable inference to be drawn is that the corporation viewed the funds furnished to the children as being compensation to Dr. Saunders.↩