**WESTERN RESERVE ACADEMY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C83–3838A.

United States District Court, N.D. Ohio, E.D.

Aug. 19, 1985.

Gilbert V. Kelling, Jr., Wright, Tolliver & Guthals, P.C., Billings, Mont., John T. Mulligan, Steven L. Gardner, McDonald, Hopkins & Hardy Co., L.P.A., Cleveland, Ohio, for plaintiff.

John M. Siegel, Asst. U.S. Atty., Cleveland, Ohio, David P. Monson, Tax Div., Peter A. Sklarew, Trial Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OF OPINION AND ORDER

KRENZLER, District Judge.

The plaintiff Western Reserve Academy (Western Reserve) commenced this action on September 26, 1983 seeking to recover withholding and Federal Insurance Contributions Act (FICA) taxes assessed to and paid by Western Reserve in its employer capacity in 1982 on funds distributed to faculty employees in 1976 and 1977 for use in defraying college tuition expenses incurred by their children. The United States of America answered on November 28, 1983 denying that any taxes were wrongfully assessed and collected from Western Reserve. Jurisdiction in this matter is based upon 28 U.S.C. § 1346(a)(1).

Pending before the Court are cross-motions for summary judgment filed by the parties on October 15, 1984.[1] The issue before the Court is whether cash tuition assistance awards paid to Western Reserve faculty members for use in defraying the

---

1. Plaintiff did not file a motion for summary judgment but instead filed a brief in support of the motion for summary judgment on October 15, 1984. The Court construes the October 15 brief as a motion for summary judgment.

undergraduate college expenses of their children constitute compensation for which Western Reserve is required to pay withholding[2] and FICA[3] taxes. This is not an action to determine faculty members' individual income tax liability for tuition awards made to their children.

Western Reserve first contends that the tuition assistance awards are scholarships exempt from any income taxation. Western Reserve further argues that even if the awards constitute taxable income to the faculty members, the awards still are not "wages" subject to the income tax withholding and FICA tax provisions of the Internal Revenue Code. The Court concludes that the awards were taxable income to the faculty members in 1976 and 1977 but that the awards were not "wages" subject to withholding and FICA tax in those years.

The undisputed facts in this case are as follows.

Plaintiff Western Reserve is a four-year residential college-preparatory school. As an educational organization it is exempt under § 501(c)(3) of the Internal Revenue Code from federal income tax but has waived its exemption from taxes imposed under FICA.

In 1958 Western Reserve sought a contribution from the Leonard C. Hanna Charitable Trust (Hanna Trust) to establish a program to enable Western Reserve to make tuition assistance awards to faculty members to aid them in defraying the college tuition expenses of their children. The purpose of the program was to enable Western Reserve to effectively compete with other independent secondary schools for quality teachers by assisting the faculty in meeting the undergraduate college tuition of their children.

Between 1958 and 1963, the trustees of the Hanna Trust made cash gifts to Western Reserve totalling $175,000 to establish the Hanna Education Fund (Hanna Fund). The principal and income of the Hanna Fund have been used by Western Reserve's Board solely for the tuition award program.

To apply for the tuition assistance awards, the faculty members themselves must provide Western Reserve officials with information as to: (1) the name of the college or university in which their child is enrolled; (2) the child's major course of study; and (3) the child's anticipated date of graduation.

The tuition assistance awards granted from the Hanna Fund are not based on the merit or scholarship ability of the faculty member's child, the family's financial need, or any other competitive criteria. Once faculty members terminate employment with Western Reserve, they cannot apply for an award for their children for the following academic year. No faculty member's application for a tuition assistance award has ever been denied. The cash distributions of the awards are made payable directly to the parent faculty member.

During the calendar years 1976 and 1977 Western Reserve distributed tuition assistance awards to faculty member Frank H. Longstreth from the Hanna Fund. The awards were made to defray the college

2. Under the Internal Revenue Code, 26 U.S.C. § 3401 et seq., employees are required to withhold tax from wages paid to employees as a means of collecting tax at the source of the income. The employer determines the amount of tax to be withheld from administratively prescribed tax tables. Under 26 U.S.C. § 3403 the employer is liable for the payment of the tax required to be withheld.

3. For purposes of old-age, survivors, and disability insurance of employees receiving wages, an employer is required under the Federal Insurance Contributions Act (FICA) 26 U.S.C. § 3101 et seq. to make two payments on behalf of the employee. Under §§ 3101 and 3102 the employer must deduct a statutorily mandated percentage of an employee's wages as a FICA tax. Under § 3102(b), the employer is liable for the payment of any FICA required to be deducted from an employee's wages. Second, under § 3111 the employer must pay a FICA excise tax equal to a statutorily mandated percentage of an employee's wages.

tuition expenses of Mr. Longstreth's four children.[4]

In this period, Western Reserve did not withhold income and FICA taxes with respect to any tuition assistance awards distributed to the faculty from the Hanna Fund.

On March 17, 1982 the Internal Revenue Service (IRS) assessed withholding and FICA tax deficiencies against Western Reserve for the first quarter of 1977 in the amount of $1,511.28 based upon its determination that the tuition assistance awards distributed from the Hanna Fund to faculty members were wages subject to withholding and FICA taxes. On April 2, 1982 Western Reserve paid $250.00 in withholding and FICA taxes attributable to one faculty member, Frank Longstreth, for the calendar quarter ending March 31, 1977. Western Reserve filed a claim for refund for that quarter for the $250.00. On May 26, 1983 the IRS disallowed the claim for refund. Subsequently, Western Reserve commenced this action.

The initial issue in this action is whether the Hanna Fund awards are income to the faculty members whose children receive the awards. Income is defined in the Internal Revenue Code, 26 U.S.C. § 61, in pertinent part as:

SEC. 61. GROSS INCOME DEFINED.

(a) *General Definition.*—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(I) Compensation for services, including fees, commissions, and similar items;

If the tuition awards are compensation for the services rendered to Western Reserve by the faculty members, then they constitute income to those faculty members. If so, it is immaterial that the awards were not received for the personal benefit of the faculty members because the first principle of income taxation is that income must be taxed to the person who earns it. *United States v. Basye,* 410 U.S.

441, 449, 93 S.Ct. 1080, 1085, 35 L.Ed.2d 412 (1973).

Some courts have dealt with the issue of whether an employer's payment of the educational expenses of an employee's child constitutes taxable income to the employee. These cases arose in the corporate context and these cases involved educational benefit trusts (EBT) established and funded by the employer to provide funds for the college expenses incurred by the children of key employees. These courts held that the amounts distributed from an EBT constituted taxable income to the employees because the payments were attributable to the employees' employment relationship rather than on any competitive criteria. c.f. *Armantrout v. Commissioner,* 570 F.2d 210 (7th Cir.1978), aff'g. 67 T.C. 996 (1977); *Saunders v. Commissioner,* 720 F.2d 871 (5th Cir.1983); *Grant-Jacoby, Inc. v. Commissioner,* 73 T.C. 700 (1980).

The *Armantrout* decision premised its holding in part on 26 U.S.C. § 83 which defines the person to whom income is allocated when, in connection with the performance of services, property is transferred to someone other than to the person for whom the services are performed. *Armantrout,* 67 T.C. at 1003. Section 83 provides in pertinent part:

SEC. 83. PROPERTY TRANSFERRED IN CONNECTION WITH PERFORMANCE OF SERVICES.

(a) *General Rules*—If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of—

(1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over

**4.** All four children received awards in 1976. One child received an award in 1977.

(2) the amount (if any) paid for such property,

shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. The preceding sentence shall not apply if such person sells or otherwise disposes of such property in an arm's length transaction before his rights in such property become transferable or not subject to a substantial risk of forfeiture.

All of the above-mentioned decisions also analyzed the economic realities behind the employer's payment of the educational expenses of an employee's children rather than the labels placed on the payment. The courts held the payments to be income to the parent-employees because the payments were, in fact, part of a compensation package to the employee rather than based upon any competitive criteria of the employee's children. In *Armantrout* and *Grant-Jacoby*, these compensation packages were designed to attract and retain valuable employees.

Plaintiff nevertheless contends that the tuition assistance awards in this action are scholarships and therefore are not income for tax purposes. Plaintiff urges the Court to conclude that colleges and private secondary schools which provide tuition assistance awards are made within the setting of educational institutions, the awards are not a disguised method of compensation to faculty members, even though the awards are not granted on any competitive critera. Plaintiff bases this argument on the regulation, 26 C.F.R. § 1.117–3, promulgated administratively by the IRS to define "scholarship."

Scholarships are exempt from gross income. The Internal Revenue Code, 26 U.S.C. § 117 provides in pertinent part:

(a) General rule.—In the case of an individual, gross income does not include—

(1) any amount received—

(A) as a scholarship at an educational organization . . .

The Code does not define "scholarship" but the regulations promulgated by the IRS applicable to § 117 in 26 C.F.R. § 1.117–3 defines a scholarship as follows:

§ 1.117–3 Definitions.

(a) Scholarship. A scholarship generally means an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to a student to aid him in pursuing his studies. The term also includes any amount received in the nature of a family allowance as a part of a scholarship. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in pursuing his studies where the grantor is motivated by family or philanthropic considerations. *If an educational institution maintains or participates in a plan whereby the tuition of a child of a faculty member of such institution is remitted by any other participating educational institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship.* (emphasis added).

The emphasized portion of the above-quoted regulation specifically includes as scholarships any amounts for tuition remitted for children of faculty members at educational institutions which participate in a tuition remittance plan. A tuition remittance plan as described in this regulation is, in essence, a reciprocal plan whereby the children of faculty of the schools participating in the plan have their tuition cancelled when attending any other educational institution in the plan other than the institution at which their parent is a faculty member. The regulation considers any amount of tuition remitted for children of faculty un-

der such a reciprocal plan to be a scholarship.

■ Western Reserve argues that its tuition assistance plan, involving the Hanna Fund is sufficiently similar to the tuition remittance plans described in 26 C.F.R. § 1.117–3 to qualify as scholarships under that regulation. The Court concludes that the tuition assistance awards are not scholarships for the following reasons.

■ The Internal Revenue Service, by assessing FICA and withholding tax deficiencies against Western Reserve, based upon the tuition assistance awards, did not interpret Reg. § 117–3 to include employer tuition assistance awards as scholarships. When faced with construction of an administrative regulation, courts must show great deference to the interpretation given the regulation by the administrative agency charged with the administration of a statute. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The ultimate criterion in construing administrative regulations is the administrative interpretation which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Id.*

The Court concludes that the administrative interpretation of Reg. § 1.117–3 that tuition assistance awards are not the same as tuition remittance scholarships, is not plainly erroneous or inconsistent with the regulation. Because the tuition assistance awards at issue in this action are actual cash awards made by the employer of the recipients' faculty member-parents, they differ significantly from the tuition remittance programs. The Court therefore defers to the IRS interpretation that the tuition assistance awards are not tuition remittance scholarships based upon Reg. § 1.117–3.[5]

Likewise, the Court finds no other basis for concluding that the tuition assistance awards in this action constitute scholarships.

The Supreme Court approved the general definition of scholarship in Reg. § 1.117–3 as comporting with the ordinary understanding of scholarships as "relatively disinterested, no strings educational grants with no requirement of any substantial quid pro quo from the recipients." *Bingler v. Johnson*, 394 U.S. 741, 751, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969).

Similarly, in defining what is not a scholarship 26 C.F.R. § 1.117–4(c) recognizes that amounts paid to or on behalf of an individual as compensation for past, present or future services which enable the individual to pursue studies are not considered scholarships. Reg. § 1.117–4(c) provides in pertinent part:

§ 1.117–4 Items not considered as scholarships or fellowship grants.

The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:

(c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies of research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided

---

**5.** Although the issue need not be determined in this action, the Court questions whether there is any Congressional mandate which would allow the promulgation of a regulation which defines tuition remittances programs as scholarships.

by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph.

The *Bingler* decision, 394 U.S. at 757–58, 89 S.Ct. at 1448–49, upheld this portion of § 1.117–4 which excepts from the definition of scholarship any amount paid as compensation for services or primarily for the benefit of the grantor. The Court stated:

The thrust of [§ 1.117–4(c) ] is that bargained-for payments, given only as a "quo" in return for the "quid" of services rendered—whether past, present or future—should not be excludable from income as "scholarship" funds. 394 U.S. at 757–58 [89 S.Ct. at 1448–49.]

■ The Court concludes that the tuition assistance awards at issue in this action are not scholarships to the faculty member-parents. No criteria for granting the awards is used other than factors relating to the parents' employment at Western Reserve. The stated purpose of the awards is to aid Western Reserve to effectively compete with other independent secondary schools for quality teachers by assisting them in meeting the undergraduate tuition needs of their children. Application for the awards is made by the faculty member-parent and payment is made directly to that parent. Eligibility to apply for the awards stops when faculty members' employment with Western Reserve terminates. Although the *form* of the awards appears to be a grant of money to aid the children of the faculty members, the *substance,* and economic reality of the awards is to provide extra compensation to the faculty members in order to obtain and keep a quality teaching staff.

The Court is mindful of the difficulty in maintaining quality education in light of the traditionally lower salaries of educators. However, it is not the province of the Court or the Internal Revenue Service to allow special tax advantages to educators over the remainder of the work force absent some directive from Congress. The Internal Revenue Code provides no such mandate allowing compensation to faculty members in the form of tuition assistance awards to be exempt from income. The Court therefore concludes that the tuition assistance awards in this action are not scholarships but are income to the faculty members whose children receive the awards.

■ The second issue in this action is whether this income to the faculty member Frank Longstreth constituted "wages" subject to the withholding and FICA tax provisions of the Internal Revenue Code.

For purposes of FICA, 26 U.S.C. § 3121 defines wages as follows:

(a) *Wages.*—For purposes of this chapter, the term *"wages" means all remuneration for employment,* including the cash value of all remuneration paid in any medium other than cash;  \* \* \*. (Emphasis added.)

Wages are defined for purposes of withholding tax in 26 U.S.C. § 3401 as:

(a) *Wages.*—For purposes of this chapter, the term *"wages" means all remuneration* (other than fees paid to a public official) for *services performed by an employee* for his employer, including the cash value of all remuneration paid in any medium other than cash;  \* \* \*. (Emphasis added.)

The Supreme Court has construed these two definitions as having the same meaning for both the income tax withholding and FICA tax provisions, c.f. *Rowan v. United States,* 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981).

The Supreme Court, in *Central Illinois Public Service Company v. United States,* 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978), concluded that wages cannot always be equated with income for withholding tax purposes. The *Central Illinois* Court held that even though the noon lunch reimbursements at issue in that action might constitute taxable income to the employees, the reimbursements were not subject to income tax withholding by the employer. *Id.* The Court based its holding on the fact that because the employer is in a secondary position as to liability for the income tax of the

employee, the employer's obligation to withhold tax should be precise and not speculative. *Id.* at 31–32, 98 S.Ct. at 922–23. The Court put emphasis on the lack of judicial decisions tax regulations or tax rulings which would place the employer on notice of the income tax consequences of lunch reimbursements. *Id.* at 32, 98 S.Ct. at 923.

The undisputed evidence in this action indicates that Western Reserve was notified in 1972 by the National Association of Independent Schools (NAIS), of which it is a member, that the Internal Revenue Service had reversed its long-standing position that neither tuition scholarships nor tuition remission for children of faculty members were income to the faculty members. The NAIS correspondence to Western Reserve two and one-half months later notified Western Reserve that the taxability of scholarship programs similar to the Hanna Fund had been challenged by Revenue Agents but were resolved in favor of the educational institutions by the National office of the IRS.

In 1976 the Internal Revenue Service served notice in the *Federal Register*, Vol. 41, No. 212 of proposed changes in the regulations in which the definition of "scholarship" as related to § 117 of the Internal Revenue Code was altered. The proposed change provided that if an educational institution participates in a plan where the tuition of a child of an employee is remitted, paid or reimbursed by the institution, that amount is considered as compensation to the employee unless the employee can establish that the program is not compensatory in nature.

Within weeks after issuance of the proposed regulations, the IRS withdrew the regulations. This event was communicated to Western Reserve by NAIS.

Based upon this undisputed evidence the Court finds that the liability of the Hanna Fund payments was speculative and imprecise in 1976 and 1977 when the awards at issue in this action were made. Therefore, under the rationale of *Central Illinois,* the Court concludes that the tuition assistance awards made to the children of Frank Longstreth during 1976 and 1977, although income, do not constitute wages subject to the FICA and withholding tax provisions. The Court grants plaintiff's motion for summary judgment and denies the defendant's motion for summary judgment. Accordingly, the Court will enter judgment for plaintiff in this action for $250.00 with interest as provided by law.

IT IS SO ORDERED.